GENARO ALONSO FONSECA, Plaintiff and Appellant, *v.* RAMONA MUÑOZ SANTANA WIDOW OF JOSÉ ALONSO GONZÁLEZ ET AL., Defendants and Appellees.

No. 10913. Argued March 1, 1954.—Decided May 17, 1954.

*Santos P. Amadeo* and *R. V. Pérez Marchand*, for appellant.
*Fiddler, González & Nido*, for appellees.

Mr. Justice Ortiz delivered the opinion of the Court.

On December 14, 1949, Genaro Alonso Fonseca brought an action in the former District Court of San Juan for division of inheritance and rendition of accounts and fruits, alleging that he was an acknowledged natural son of José Alonso González, predecessor in interest of his widow and legitimate children defendants herein; that José Alonso González died on January 12, 1910, under a will leaving the defendants as his sole heirs; that on March 27, 1916, the former District Court of San Juan rendered judgment declaring plaintiff a natural child of said predecessor in interest, plaintiff having been born before the said predecessor married co-defendant Ramona Muñoz Santana, widow of Alonso, thereby rendering null and void the will in question on the ground of preterition; that on September 2, 1913, the defendants executed a deed of partition of the hereditary estate, to the exclusion of plaintiff, whereby the

widow remained in possession of the estate as administratrix thereof; that the properties to be partitioned were worth (according to an amended complaint) $2,000,000; that defendants have enjoyed in usufruct all the properties, whereas plaintiff has failed to receive any fruits or rents of any kind whatever when he should have received the sum of $485,689.74 on account of such fruits and rents.

In their answer, the defendants alleged, among other special defenses, that "if plaintiff herein has any right to claim a hereditary share of the estate left upon the death of José Alonso González, the action for division is contrary to law and has prescribed, and any right sought to be asserted thereunder has extinguished because of the actual indivision of co-ownership, since defendants have been in the uninterrupted possession of the hereditary estate, as owners and to the exclusion of plaintiff, for over 30 years as respects real estate, and for over 6 years as respects personal property."

After several incidents, this Court held and ordered by way of certiorari that a separate trial on the question of prescription raised by defendants be held in the San Juan Court. *Muñoz* v. *District Court*, 72 P.R.R. 788. A trial was held on that question and after weighing the oral and documentary evidence offered by both parties the San Juan Court held that defendants had acquired by acquisitive prescription the ownership of the property herein involved, having been in possession thereof, as owners, for more than 30 and 6 years, to the exclusion of plaintiff. Thereupon the San Juan Court rendered judgment dismissing the complaint. Plaintiff appealed to this Court. The issue involved is whether defendants have acquired the title to the property in fee simple by extraordinary acquisitive prescription, as a result of which plaintiff forfeited all his rights to the property as well as his right to bring action for partition and recovery of the fruits.

According to the findings of fact of the lower court, on the evidence presented and the stipulations made by the parties in the course of the trial, the facts are, briefly, as follows:

Plaintiff was born on September 19, 1892 and in 1893 José Alonso González married codefendant Ramona Muñoz Santana. The codefendants, legitimate children, were born of that union. José Alonso González died on January 12, 1910, under an open will leaving his widow and legitimate children as his sole heirs. On September 2, 1913, the widow and the legitimate children, the latter represented by a guardian *ad litem*, executed a deed whereby certain amounts of money in cash and certain specifically designated credits were adjudicated in favor of the widow and codefendant in payment of her usufructuary quota and her share in the conjugal partnership. The remaining properties, which were also specifically designated, were adjudicated to the legitimate children "in equal undivided shares," on the basis of one-fifth to each. Plaintiff was excluded from those adjudications.

On November 23, 1915 plaintiff filed an action of filiation against the heirs of José Alonso González and claimed his share in the predecessor's estate. On March 27, 1916 the former District Court of San Juan rendered judgment declaring plaintiff herein the acknowledged natural child of José Alonso González, annulling his will as to the institution of heirs and the deed of September 2, 1913. The defendant heirs appealed from that judgment. While the appeal was pending, codefendant Ramona Muñoz widow of Alonso and plaintiff herein executed on July 19, 1916 a deed of "sale and assignment of rights and actions," whereby the parties agreed to compromise all claims involved in the action brought by plaintiff, which was on appeal, and all other claims which he might have against the said heirs arising as a result of that litigation; that plaintiff Genaro Alonso

Fonseca, "sells, assigns, waives and conveys in favor of the other appearing party, Ramona Muñoz y Santana, widow of José Alonso González, who acquires them in her own name, all rights and actions which the former had, has or may hereafter have in the hereditary estate left upon the death of the said José Alonso González." It was further set forth that "Fonseca himself, in consideration of the purchase price received by him for all such rights and actions, also waives, desists from and relinquishes all right to claim, judicially or extrajudicially, his designation as acknowledged natural child or otherwise of the late Alonso González; that he binds himself to desist from, and does hereby consider abandoned and desisted from, the said judicial action, which is now pending . . . further waiving any right or benefit which may accrue to him or be derived from the judgment, now on appeal." The assignment and waiver were made for the agreed price of $7,000, which plaintiff received, it having been set forth that "that sum which he receives in this act represents the fair value which, in his opinion, is the present worth of the share which might correspond to him in the hereditary estate of Alonso González." Plaintiff further ratified the validity of the operations involved in the partition made in the deed of September 2, 1913, "waiving all right to challenge, avoid and rectify the same."

On December 14, 1949, or more than 30 years after the deed of sale and assignment of rights of July 19, 1916 was executed, Genaro Alonso Fonseca brought the action involved in this appeal. Based on the deed of July 19, 1916, defendants moved for summary judgment. The San Juan Court overruled the motion for summary judgment and held that the 1916 deed was null and void on the ground that plaintiff invalidly waived thereby his status as natural child, such illegal waiver being inseparable from his share of the estate. Such holding has not been challenged and still stands for the purposes of this appeal. Thereafter the judgment appealed from was rendered.

Although, as a matter of law, the deeds of September 2, 1913 and July 19, 1916 are null and void, as a matter of fact the codefendants, legitimate children of José Alonso González, were in possession of the properties herein involved for more than 30 years before the action herein was brought, having actually held such property in common and undividedly, as coowners or coheirs and to the exclusion of plaintiff, who did not share that actual possession. The legitimate children, in their own right or through their mother, codefendant herein, widow of Alonso, as administratrix of their common undivided interests, obtained for themselves and in their own name, and for their exclusive benefit, the entire proceeds, rents and profits from the properties, paid the taxes thereon, and made several transactions involving such properties, for over 30 years. Plaintiff took no part in any of those transactions or operations, he did not share the enjoyment of the fruits and profits of the properties, nor did he share at all in the payment of the liens. For this reason, the San Juan Court held that the legitimate children had been in possession of the property as owners for over 30 years, as a result of which they had acquired title to the property in fee simple and plaintiff's rights were defeated. Plaintiff-appellant's contention is that the undivided possession by the legitimate children implies that the action of partition which might accrue to a coowner, such as plaintiff, would never prescribe, and that the statutory provision bearing on the acquisition of ownership by possession, as owner, for over 30 years is not applicable to the case of joint ownership. Defendants-appellees in turn allege that, although it is true that the possession was joint and undivided among the legitimate children, plaintiff did not share that real undivided possession, and that, as respects plaintiff, the legitimate children held the possession as owner, to the exclusion of plaintiff. Defendants admit that if all the coowners share in the undivided posses-

sion, the material possession by a coowner for the benefit of the other coowners does not imply that the coowner who has the immediate possession acquires ownership, by prescription, over the other coowners, but that if one or more coowners are in possession of the property for over 30 years, the property being in their own name, interest and benefit, as if that coowner or coowners were the only owners, the other coowners being excluded from the benefits and encumbrances of that possession, then the coowners who have held the possession as owner, to the exclusion of the other coowners, have acquired the title in fee simple by virtue of the extraordinary acquisitive prescription.

▬▬ Defendants are right. By way of preliminary orientation, formulated in simple terms, assuming always the possession for 30 years, in the case of an undivided possession either by all the coowners or coheirs or by one or some of them, in the name and on behalf of the others, the immediate or material possessor or possessors would not be in possession as exclusive owners but as coowners. Therefore, they could not acquire title by extraordinary acquisitive prescription, and the action accruing to the other coowners to request the partition or division of the estate would not be subject to extinctive prescription. Furthermore, in that case the possession by one coowner, in the name and on behalf of the others, would be beneficial to the others for the purposes of the acquisitive prescription in behalf of all the coowners, but would not be beneficial personally and exclusively to the coowner holding the material possession, for the purposes of acquiring the title for himself, since he would not be in possession in his own name. However, if one of the coowners possesses for over 30 years a particular property belonging to the community, or all the common properties, exclusively and in his own name, he alone receiving the profits, fruits and proceeds of such property or properties, without the other coowners sharing in the profits and

encumbrances of such possession, then that coowner would be in possession as owner and could acquire title by virtue of the extraordinary acquisitive prescription. Similarly, if two out of six coowners hold possession as owners for over 30 years, in their own name and behalf, and to the exclusion of the other four coowners, as respects the profits and obligations inherent in the possession, then those two coowners would acquire ownership by extraordinary acquisitive prescription, thereby defeating the right of the other four to demand partition. Similarly, if, as in the instant case, five out of six coowners have held the possession as owners for over 30 years, to the exclusion of the other coowner, then the title in fee simple would have been acquired by the five coowners, material possessors as owners, and the sixth excluded coowner would have no right to demand the partition or division of the common property.

Section 1865 of our Civil Code provides as follows:

"Among coheirs, coowners, or proprietors of adjacent estates, the action to demand the division of the inheritance, of the thing held in common, or the survey of the adjacent properties does not prescribe."

As we shall presently see, the applicability of the latter Section is subordinate to the provisions of § § 1859 and 1841, in connection with § 376 of the same Code, relative to the acquisition of ownership by the uninterrupted possession as owner for 30 years. Harmonizing the sections of the Civil Code, the action to demand the partition or division as between coheirs or coowners does not prescribe, provided there is a complete state of indivision, but if one or more coheirs or coowners have held the uninterrupted possession as owners for over 30 years, such possession implies the absence of a real indivision and the inapplicability of § 1865.

Commenting on § 1965 of the Spanish Civil Code, which corresponds to § 1865 of our Code, it is stated in 12 Manresa 921, 922 (5th rev. ed.), as follows:

"It is an elementary notion, which needs no explanation or justification at this time, that actions may be of different classes, dependent upon the right secured thereunder, or whose exercise is established by law, generally distinguished by the Code as real, personal and mixed.

"As respects the latter, according to the jurisprudence laid down prior to its publication, the Code has declared them to be in a way imprescriptible, providing in its § 1965, as already stated that as between coheirs, coowners or proprietors of adjacent properties, the action to demand the division of the inheritance, of the thing held in common, or the survey of the adjacent properties, does not prescribe. The Supreme Court had already consecrated those same principles, adapting itself to the nature of the extinctive prescription. The judgment rendered on December 22, 1860, according to which prescription among co-owners does not lie, is deserving of mention.

"However, the imprescriptibility of the action to demand the partition of the inheritance, known in Roman law by the name of *familiæ erciscundæ*, cannot be invoked when one of the coheirs has held the possession of all the inheritance as owner and long enough to acquire it by prescription, since such an action rests necessarily on the joint or undivided possession of the hereditary estate, as recognized by that court in the judgments of April 15, 1904 and June 6, 1917. By judgment of May 21, 1904, that court also held that 'it having been proved, in the opinion of the lower court, that the properties in dispute were not a part of an undivided inheritance but the private property of a particular person, the aforesaid principle of imprescriptibility of action cannot be usefully invoked as against that person, which principle is the foundation of the prohibition set forth, as respects such imprescriptibility, in § 1965. It should also be borne in mind that, as held in the judgments of that Supreme Court of January 15, 1902 and June 22, 1904, the action among coheirs or coowners to demand the partition of the inheritance or the indivision of a tenement, to which reference is made in that Section, is independent of the action of revendication exercised over the *pro solido* ownership of the same tenement, and, actually, if the purpose is to revendicate properties of the estate or some part of a tenement held in common and not the partition thereof, the prohibition contained in that Section shall not be applicable.

"The judgment of July 7, 1930 is a departure of the foregoing doctrine. The judgment of April 15, 1932 says that the imprescriptibility is subordinate to the timely exercise of the *petitio hereditatis.*"

Sections 1005 and 1006 of our Civil Code provide as follows:

"Section 1005.—No co-heir shall be compelled to remain in possession of the inheritance without partition unless the testator expressly prohibits partition. This prohibition shall not extend to the property which constitutes the lawful portions of the heirs. In every case, partition shall always be had for any reasons for which a partnership is dissolved.

"Section 1006.—Every co-heir having the free administration and disposal of his property may at any time request the division of the estate.

"The legal representatives of incapacitated persons and absentees must request the division in their name."

Construing § § 1051 and 1052 of the Spanish Civil Code, which correspond to our § § 1005 and 1006, it is stated in 7 Manresa 616, *et seq.* (6th, rev. ed.) as follows:

"(E) Even though there is no agreement, or partnership, or contrary provision of the testator, and even though the partition has not been made, it can not be absolutely asserted that the coheirs may request the partition *at any time.*

"The proper action is the so-called *familiæ erciscundæ,* identical in its essence with the *communi dividundo,* which is imprescriptible under § 1965.

"However, this action cannot be exercised where a third party is in possession of the hereditary estate. In that case, the proper action would be, in the first place, the petition for inheritance, which lapses after 30 years but which must be exercised before the third party acquires the property by prescription. If the latter affects only certain properties, the division may be requested as to the remaining properties. This doctrine has been sanctioned by the Supreme Court in numerous decisions, among others, that of May 31, 1899, in which it is held that an action among coheirs to petition for the division of the inheritance whenever one of them has held possession as owner of the properties, peacefully and publicly, for over 30 years, is prescriptible.

"Is it possible for one of the coheirs to claim by prescription all or any part of the hereditary estate, thereby precluding in whole or in part the action of division of inheritance? Although this question is closely connected with § 1965, it must necessarily be passed upon briefly at this point.

"Section 915 of the proposed Code of 1851 read thus: 'The action to demand partition of the inheritance expires at the end of thirty years as against the heir who has held the possession of the whole or part of it, in his own name and as universal and individual master. If all the coheirs would hold in common the possession of the inheritance, or one of them in the name and as the property of all, prescription does not lie.'

"This is the doctrine adopted in most codes. How can it be reconciled with the principle of imprescriptibility of the action of partition? It is very simple. The action never prescribes by the mere lapse of time, irrespective of whether the properties are held by one or several coheirs and their successors during one hundred or two hundred years as co-owners. There does not exist therefore, merely *extinctive* prescription for the exercise of the action.

"However, it is necessary to harmonize this doctrine with that of *acquisitive* prescription, which permits the acquisition of property, even if hereditary, whenever sufficient possession is acquired by the lapse of time, that is, the possession of the same property as sole, individual and exclusive owner. As long as one of the coheirs holds the possession as such, he is in possession in the name of all and he cannot claim by prescription; however, if he holds possession as sole heir, even if there are several, or as exclusive owner, he may acquire by prescription.

"On the other hand, as long as the undivided thing is in possession of the heirs, either by themselves or by another in their name, demand for division is in order. When there is no possession at all, the action to petition for inheritance, which confronts the same difficulties, seems more proper, but it is in itself prescriptible.

"However, if the coheir is in possession of more property than would correspond to his share, under § § 1952 and 1959 he needs thirty years before he can take title by prescription with respect to that portion which does not by law belong to him, regardless of whether or not he possesses in good faith without good and sufficient title.

"Regarding personal property, the same doctrine applies. Inheritance is universal, whether it consists of personal or real property, and prescription for three or six years does not lie since what actually prescribes is not the thing but the hereditary right thereto. Furthermore, the principle that the possession of personal property in good faith amounts to the title, is applicable to the relations between the legitimate owner and third possessors and not to the relations between coheirs or coowners.

"The essential thing is possession as exclusive owner of the property in question. Possession in that capacity must be sufficiently proved. In case of doubt, it must be presumed that the coheir does not possess in his own name exclusively, but in his own right and in the name of the others, as coowner and not as exclusive owner.

"After thirty years of exclusive possession, the exception of prescription may be raised against the action for division of the inheritance.

"*What is said in connection with all the hereditary properties and with only one of the heirs is applicable to some of the property only and to several heirs. If two or more heirs, regarded as sole heirs, enjoy the estate, dividing it or not among them, the remaining heirs may bring action for division against the possessors only in the event the former have not consolidated their right by virtue of prescription.*

"Summing up, the condition of joint ownership of the inheritance having been created by the death of the predecessor in interest and the existence of several heirs, the law, which aims in all things to allow as much liberty as possible, empowers each coparticipant to demand partition at any time, and he can not be compelled by the other coparticipants to remain in the common ownership. This action is imprescriptible.

"Notwithstanding the foregoing, the partition may be suspended for some time:

"1. By express agreement of the heirs under § 400, or by the organization among them of a partnership with the common property.

"2. By express disposition of the testator, or by allowing the undivided property to continue in compliance with the testator's will.

"It should be suspended in the case provided in § 96.

"Demand for partition of the inheritance may not be made:

"1. Whenever the final partition has been made.

"2. Whenever the properties to be partitioned, or the hereditary right thereto, have been acquired by prescription by a third party, or by one of the heirs, and they have been in possession as exclusive owner.

"Although no doctrine of interest is laid down, §§ 1051 and 1052 are cited in the judgment of the Supreme Court of July 8, 1903, in which, annulling the judgment on appeal from the Audiencia, it determined the right of a coheir and coowner to demand at any time the inheritance in dispute." (Italics ours.)

Construing § 1052 of the Spanish Code, Scaevola states in Vol. 18, pp. 242, 243, as follows:

"A) *Action for division of common inheritance: its nature.*

"The action *familiæ erciscundæ,* established for the division of the common inheritance, has its origin, as stated in the preface of Tit. II, Book X, of the Digest, in the law of the *Doce Tablas* because, where the coheirs wish to divide the common thing, it seemed necessary that some action be constituted whereby the hereditary things be divided among them. According to § 2 of Law 1 of the said title and book, whether it be acquired under a will or without a will, under the law of the *Doce Tablas* or some other law, or by constitution of the Senate, or by any other constitution, it is divided by the action of division of the family, and, generally, only the inheritance of those who may request it can be divided.

"A Spanish text writer says: 'If a right is recognized as belonging to the coheirs, which is to cause the hereditary community to cease at any time and to become individual owners of their actual share, it is logical that the corresponding action be provided to them for such purpose, which is, as defined in precise terms by Justinian, *jus persequendi judicio quod nos sibi debetur.'*

"And that action is of such nature that it is declared imprescriptible by § 1965, although, as stated in § 3460 of the Code of the Argentine Republic, that imprescriptibility shall be maintained while the indivision actually continues to exist, it being subject to prescription whenever it has actually ceased, because some heir, acting as sole owner, has taken possession individually. It is further stated in the next section that,

where the possession involves only an aliquot part of the inheritance or of individual objects, the action of partition prescribes with respect to that part or those objects and shall continue to exist as respects those parts or objects not covered by the possession. For this reason, § 967 of the Venezuelan Code provides that the partition may be requested even though one of the coheirs has enjoyed separately a part of the inheritance, unless it be proved that the partition has been made, or that there has been sufficient possession for the prescription."

In Castán, *Derecho Civil Español*, Vol. 1, p. 334 (6th rev. ed.), it is said:

"D. *Scope of the extinctive prescription.*—It is said in the second paragraph of § 1930 that 'rights and actions of *any kind whatever*' are extinguished by prescription. However, this rule is not as absolute as it might seem. In the first place, the Code itself formulates an exception to the rule in § 1965 stating that 'as between coheirs, coowners, or proprietors of adjacent estates, the action to demand the partition of the inheritance, of the thing held in common, or the survey of the *adjacent* properties, *does not* prescribe.' This imprescriptibility of the so-called *mixed actions* is traditional in our laws. However, for such imprescriptibility to exist, compliance must be had with the implied assumption in the legal text to the effect that the possession of the property must be *joint or undivided,* for if one of the coproprietors or coheirs possesses the things in his own name and during sufficient time to acquire them by prescription, such action shall prescribe (judgments of May 31, 1899; April 15, 1904; November 24, 1906, and June 6, 1917)."

The Supreme Court of Spain, in its Judgment of May 31, 1899 (87 *Jurisprudencia Civil* 358), holds that a coheir may acquire by prescription the exclusive ownership of the hereditary estate, pursuant to Law 7, title 14, Partida 6. In that case, a coheiress performed ownership acts, without objection of the other heirs, for more than thirty years; she leased the properties and acted as absolute owner, receiving the proceeds and paying the charges and the taxes. Those facts are analogous to those in the case at bar. It was held

that, since she had possessed in her own name and as exclusive owner, she had acquired ownership by prescription as against the other coowners.

In the Judgment of April 15, 1904 (98 *J. C.* 121) of that same court, it was held that the action to request the division of the inheritance had not prescribed, because data was lacking evidencing possession as owner by some of the heirs individually and there was absent the fact of possession in his own name. It is stated that the person who holds the possession jointly or undividedly, does so in the name of all the interested parties and not in his own name, and, therefore he cannot acquire by prescription. In the case at bar, the facts show that the legitimate children held the possession in their own name. It is true that they held the possession jointly or undividedly among themselves, but, as respects plaintiff, he was excluded from possession. The legitimate children did not possess in plaintiff's name, and they acted in their own name as respects the excluded plaintiff.

In the Judgment of November 24, 1906 (105 *J. C.* 804) it is held that the question of prescription, ownership, or the action of partition depends on whether the material possessor possesses in his own name, or jointly and undividedly. The evidence showed that the possession was as owner. In the Judgment of June 6, 1917 (1940 *J. C.* 534), the coheir possessed individually, in his own name and as owner. The other coheirs did not object. It is stated that the fact that he was regarded as sole owner is evidenced by the payment of taxes in the name of the possessor, and that the children of the former possessor, as owner, that is, *several coowners, to the exclusion of the other heirs*, uncles of those coowners and possessors, cultivated and leased the lands, disposed of the fruits and paid the taxes. It is held that the imprescriptibility of the action for partition rests on the possession in common or undividedly, but that in the case at bar, where several coowners hold the possession as owners for

more than thirty years, to the exclusion of the other co-owners, the action for partition would then prescribe.

The Supreme Court of Spain adopts a different theory in its judgment of July 7, 1930. It holds that the action for division of the inheritance is broader than the action of revendication, and that the action does not prescribe as between coheirs, "which precept excludes the application of the provisions bearing on ownership by acquisitive prescription." It is stated that a distribution was not a final liquidation, wherefore as long as no liquidation was made the state of indivision had perforce to continue. That opinion or judgment was criticized and subsequently impliedly overruled by the Supreme Court of Spain. Irrespective of the fact that that court mistakes the existence of an indivision, as a question of law, for the absence of a total indivision, as a question of fact, that judgment has been the subject of other criticism. In the *Revista de Derecho Privado* (Vol. 19, pp. 318, 319), José Castán then a commentator, wrote as follows in connection with that judgment:

"Although we do not fail to recognize the equitable and moral merits of this judgment, assuming the bad faith which the court attaches to the defendant-respondent, it seems from a technical point of view, that its doctrine is very weak and ambiguous. Apart from the theory, which is very questionable and inspired by narrow formalism, if there is need to resort to § 348 of the Civil Code for the exercise of the action of revendication, the present judgment embraces a sweeping concept of the action for division of the inheritance. The court includes in the scope of this action—which, in fact, is none other than the legal means by which the heirs whose title and rights are not in conflict, request the cessation of the indivision—not only the distribution of the properties which are already part of the estate and have been collectively and jointly possessed by the heirs, but also the incorporation into the hereditary estate of properties which are not comprised therein and which have been possessed, individually, by only one of the heirs. And having thus enlarged the concept of the action for partition, the way is open for the court to apply to the case

§ 1965, relative to the imprescriptibility of actions for division, in which case it would have attained the practical object of avoiding dispossession, but it has laid down a dangerous doctrinal precedent. The theory of imprescriptible actions embraced by § 1965 must be strictly applied. The law renders imprescriptible the right to leave the joint ownership, for that right is for the coheirs a mere *power* which is renewed every day and lasts as long as its cause. The three actions enumerated in § 1965, rather than being absolutely imprescriptible, are such only in the event of compliance with the implied assumption contained in that section that the thing be held in common and jointly, for whenever one of the coowners or coheirs possesses the things in his own name and meets all the requirements necessary for prescription, such actions become prescriptible. This had been so far recognized by the Supreme Court, (judgments of May 31, 1899, April 15, 1904, November 24, 1906, and June 6, 1917), and it is to be expected that the departure to which the present judgment gives rise, explicitly or implicitly, in connection with that doctrine, will not become deep-rooted."

José Castán himself was the writer of a judgment of June 8, 1945 of the Supreme Court of Spain (Vol. 11, 2d series, *Jurisprudencia Civil*, pp. 161, 168), in which he stated:

"It is a classical doctrine, already formulated in Roman law and consecrated by modern legislation and by § 1965 of our Civil Code, that the so-called actions for division whereby, specifically in cases of joint ownership, each of the parties may demand the dissolution of the community and the division of the common inheritance, are subject to the effects of extinctive prescription; but this rule, which responds not only to criteria of legislative policy in relation to conditions of the property regarded of meager advantage, but also to the very simple reason that the power to ask for the division is not a right having its own substance, which may be extinguished by its lack of exercise, but a power (*res meæ facultatis*) which is born and reborn at all times from the ownership relation and which must be considered subsisting as long as the ownership itself shall last (*in facultativis, non datur præscriptio*), must be maintained within its concrete scope inherent therein, in the sense that the action to petition for its annulment and not the

condominium itself is imprescriptible, and that, therefore, the principle in question necessarily presupposes the *existence* and *subsistence* of the situation of coownership, which entails a two-fold consequence: (*a*) That imprescriptibility does not come into action—at least directly—when the *existence* of the right of coownership on which the former is founded is not recognized or proved, and its judicial declaration is precisely sought; (*b*) that that imprescriptibility, which operates within the circle of coheirs or coowners who have possessed the property jointly, is not, in turn, applicable where one of them or a third person has possessed them exclusively, quietly, peacefully and as owner, long enough to acquire them by prescription (judgments of this Section of April 14, 1904, November 24, 1906, June 6, 1917, and June 8, 1943), since in that case the usucapion of the common thing, acquired by the coowner or by the third person, excludes the *subsistence* of the condominium and therefore forecloses the action to demand the division of the thing."

Previously, the Court of Spain itself had implicitly repudiated the doctrine announced in the Judgment of July 7, 1930. In the Judgment of June 8, 1943 (Vol. 3, 2d series, *Jurisprudencia Civil*, p. 317), it is held as follows:

"1) Section 1965 of the Civil Code does not violate the judgment dismissing an action for damages in performing a partition which, far from asserting that the properties claimed were undividedly possessed, declares that defendant held and possessed them, quietly and peacefully, as owner and for the statutory period fixed for acquiring them by usucapion, it being known that if § 1965 as well as the doctrine of the Supreme Court announced in the judgments of May 31, 1899, April 15, 1904, November 24, 1906, and June 1917, recognize, as is traditionally done under our doctrine, the imprescriptibility of the action *familiæ erciscundæ*, they emphasize that the joint or undivided possession of the hereditary estate must at all times be assumed."

Let us examine the jurisprudence of the Philippine Islands on the matter. Construing § 1965 of the Civil Code of the Philippine Islands, which is identical with our § 1865 (relative to the imprescriptibility of the action of partition

or division among coheirs or coowners), it is held in *De Castro* v. *Echarri*, 20 Philip. Rep. 23, that imprescriptibility cannot be invoked when one of the heirs has possessed the property as owner, as such right of action necessarily arises from the possession in common, or *pro indiviso*.

In *De los Santos* v. *Santa Teresa*, 44 Philip. Rep. 811, 816, it is stated as follows:

"Therefore, in order that the action of the coowners to demand partition of an inheritance or division of the thing held in common may not prescribe, it is essential that the hereditary property of the thing alleged to belong to them jointly be possessed in common or collectively, and, although one of them may be the actual holder or possessor of the property, that such possession be in the interest and name of the coheirs or coowners.

"Since the property sought to be divided as hereditary property left by Gregorio Santa Teresa was not held in common or jointly by the plaintiffs and the defendant, since the death of said common predecessor, Gregorio Santa Teresa, which took place more than thirty years ago, and since it appears, on the contrary, according to the stipulation of facts that the defendant has been, and is, in quiet and peaceful possession of said property, not in the name and interest of those who claim to be coheirs or coowners as to said property, but individually in his own name and sole owner thereof since the death of said Gregorio Santa Teresa more than thirty years ago, without any interruption whatever by any person claiming to have any share in said property, and without any intervention on the part of the plaintiffs, the trial court did not err in holding that the action brought by the latter had already prescribed, notwithstanding the provisions of Article 1965 of the Civil Code."

In *Ramos* v. *Ramos*, 45 Philip. Jur. 362, 371, it is stated as follows:

"It is undoubtedly a general rule of jurisprudence, recognized in Article 1965 of the Civil Code, that prescription under the civil law cannot ordinarily become effective from mere possession by one coheir or coowner as against his coheirs and coowners; and the same idea is fully recognized in the common

law. The reason for this is that the possession of one coheir or coowner ordinarily inures to the benefit of his fellows. His possession is therefore not adverse. But when the occupant ceases to hold in the character of coheir or coowner and holds or claims by some other right or title, prescription becomes effective to the same extent as in other cases."

We are therefore concerned with a possession adverse to everyone.

In *Solla* v. *Ascueta*, 49 Philip. Rep. 333, it is held that the exclusive enjoyment by a coheir of the fruits of a property constitutes possession as owner which might serve. as basis for acquisitive prescription. In *Casañas* v. *Roselló*, 50 Philip. Rep. 97, it is held that, generally, prescription cannot be pleaded among coheirs. An exception to that rule, however, exists when one heir openly and adversely occupies property against his coheirs for a long period of time.

Plaintiff-appellant, as we have seen, contends that even assuming that a coheir may acquire ownership by his individual possession as owner for more than thirty years with respect to a specific property, the question here concerns, at the most, the undivided possession by the legitimate children with respect to all the properties, and the general rule that the action for partition is imprescriptible whenever an undivided possession is involved, should be applied. However, in the case at bar, even if the legitimate children held the undivided possession among themselves, plaintiff, a coheir and coowner, did not share that undivided possession. The legitimate children held the possession as owners to the exclusion of plaintiff, the other coheir. Such of the coheirs as hold possession as owners for more than thirty years, to the exclusion of the remaining coheirs, may acquire possession by extraordinary acquisitive prescription, to the prejudice of the other coheirs who have not shared the possession. We repeat here Manresa's commentary in Vol. 7, p. 618 (6th rev. ed.) after setting forth

the rule that possession, as owner, by a coheir operates to the prejudice of the others. He says: "What is said in connection with all the hereditary properties and with only one of the heirs is applicable to some of the property only and to several heirs. If two or more heirs, regarding themselves as sole heirs, enjoy the estate, dividing it or not among themselves, the remaining heirs may bring action for division against the possessors only in the event the former have not consolidated their rights by prescription."

We realize that the outcome of the instant case might be prejudicial particularly to plaintiff, who is undoubtedly a coheir. However, we cannot overlook the fact that defendants have held possession as owner for more than thirty years. Extraordinary acquisitive prescription might always cause prejudice to someone, even to one who formerly had certain rights. But such prescription is based on concepts of a social order which tend to stabilize juridical relations. Plaintiff himself was responsible for not interrupting the possession held by defendants as owners and for failing to take any action to defend and assert his rights for more than thirty years, without having resorted in due time to the courts to ask for the partition of the properties and the annulment of the deed of 1916. He filed his complaint more than thirty years after defendants came into possession of the property as owners. Plaintiff must bear the consequences of his inaction.

The judgment appealed from will be affirmed.

Mr. Justice Pérez Pimentel did not participate herein.